IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GRANT KEATING, | ) | CASE NO.:   1:11 CV 1775 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| PETERSON'S NELNET, LLC, *et al.*, | ) | <u>AND ORDER</u> |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Motions for Summary Judgment filed by Defendants Nelnet, Inc., Peterson's Nelnet, LLC, and CUnet, LLC.  (ECF # 85, 86).  Plaintiff filed a Consolidated Opposition to the Motion[s] for Summary Judgment, (ECF #92), and the Defendants filed Replies in support of their respective motions.  (ECF #96, 97).   For the reasons set forth below, Defendants' Motions are GRANTED.

## I. PROCEDURAL AND FACTUAL HISTORY

On August 24, 2011, Plaintiff filed a Complaint against Defendants Peterson's Nelnet, LLC, and Nelnet, Inc., alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").  (ECF #1).   In August of 2012, the Complaint was amended to add CUnet, LLC ("CUnet") as an additional defendant.  (ECF #50).   The Amended Complaint is a putative class action complaint that alleges the Defendants violated federal law by using automatic telephone dialing systems to call and text cellular telephones without the express consent of the telephone's owner.  Specifically, Mr. Keating, the named Plaintiff contends that

he received a text message on June 10, 2011, sent on Defendants' behalf, that read: "Searching for a college or trade school? Get FREE education advice. Call to speak to an advisor now at 866-944-3042. Send STOP to opt out." Mr. Keating further contends that the 866 number contained in the text message is the "Defendants' phone number," and that the Defendants sent this message and/or caused this message to be sent using an automatic telephone dialing system. Finally, Mr. Keating claims that he never gave express consent to receive a call (or text) from the Defendants. The Amended Complaint also alleges that other calls were sent, by the same method, by the Defendants and their agents, to other cellular telephone numbers without the owners' prior express consent. The Plaintiff seeks statutory damages of $500.00 for each proven violation, treble damages pursuant to 47 U.S.C. § 227(b)(3), and reasonable costs and attorney fees.

Taken in the light most favorable to the Plaintiff, the basic facts underlying Plaintiff's claim are as follows[1]: Plaintiff, Grant Keating received an unsolicited text message on the cellular phone that is provided to him by his employer. (ECF #85-8).[2] The phone number of this

---

[1] The following facts are not necessarily true, or un-controverted, but they will be viewed in the light most favorable to the Plaintiff, and accepted as true for purposes of deciding these summary judgment motions.

[2] From April 3, 2009 through the time the text was allegedly received, the phone number (216) 409-2311 was a Verizon Wireless account registered to Dworken & Bernstein Co. LPA. (ECF #86-7 at 10). From August 15, 2002 to May 9, 2007, it had been registered to Mr. Keating. (ECF #86-7 at 9). There are no records in evidence showing who the phone number was registered to between May of 2007 and April of 2009. There is evidence to show that a person by the name of Lillian Horne from Cleveland represented this to be her number on several web based forms all throughout 2010. (ECF #92-2 at 67-69; ECF #86-9 at 36-37). There is also evidence to suggest that Ms. Horne, using this phone number, consented to receive text messages relating to educational opportunities. (Id.).

cellular phone is (216) 409-2311. (Amended Complaint; ECF #86-9 at 35). The text message was intended to solicit business for Defendant CUnet's CollegeQuest marketing campaign, and included the CollegeQuest phone bank number (*866)-944-3042).[3] (ECF #92-2 (CU00184)). Mr. Keating never authorized or consented to receive text messages from any of the Defendants, CollegeQuest, or any other entity associated with the CollegeQuest campaign. (ECF #92-9). The call was made by an automated dialing machine. (ECF #92-3 at 4).[4]

The uncontroverted evidence presented by the Defendants establishes the following additional facts. The text message was not sent by any of the Defendants. Defendant CUnet contracted with CornerBlue, Inc. ("CornerBlue") to provide mobile media marketing services for the CollegeQuest campaign. (ECF #92-2 at 52-55). CornerBlue contracted with AKMG, Inc. ("AKMG"), who runs an affiliate network or marketplace, to find available third party affiliate marketers for the CollegeQuest campaign. (ECF #86-8; 92-2 at 59). AKMG contracted with third party affiliate marketer River City Media, LLC ("River City"), to provide mobile media marketing for the CollegeQuest campaign. (ECF # 86-8). River City sent the text to Mr. Keating's number. (ECF #92-3 at 2, 4).

---

[3] Mr. Keating, himself, testified that he did not know why the text was sent, who it was intended to benefit, or who sent it. (ECF #86-6).

[4] Matt Ferris of River City testified that the text messages sent in connection with the CollegeQuest campaign were sent via "auto dialer." (ECF #92-3 at 4). This is insufficient, in and of itself, to determine whether the messages were sent using an "automatic telephone dialing system" as defined by the TCPA. (ECF #92-3 at 5). See, *Buslepp v. Improv Miami, Inc*., 2012 Dist. LEXIS 148527 (S.D. Fla. Oct. 16, 2012)(Plaintiffs bear the burden of proving that the means of sending a text message meets the precise definition of an "automatic telephone dialing system" under the TCPA). However, this testimony is sufficient when taken in the light most favorable to the Plaintiff, to establish this fact for the sole purpose of defending against a motion for summary judgment.

River City had no dealings whatsoever with CUnet, or any other Defendant in this case. (ECF #92-3 at 4). Likewise River City had no dealings whatsoever with CornerBlue. (ECF #92-3 at 4). AKMG asked River City to do a texting campaign on the CollegeQuest campaign and provided River City with the language to be used in the text messages. (ECF #92-3 at 3, 5). CUnet did not provide or approve any language or other creative materials that were used in connection with the text messages at issue in this case. (ECF # 86-3, ¶¶ 7, 10-11).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for

summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

-6-

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. It is with this standard in mind that the instant Motion must be decided.

### III. DISCUSSION

At issue in this case is an alleged violation of the TCPA's section 227(b)(1)(A)(iii), which provides that it shall be unlawful for any person

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to . . . a cellular telephone service, . . . or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii). Under the TCPA, the term "automatic telephone dialing system" means any equipment that has the capacity to "store or produce telephone numbers to be called using a random or sequential number generator" and "to dial such numbers." The Federal Communication Commission ("FCC"), in adopting regulations to implement the TCPA, has opined that the prohibitions set forth above apply to both voice calls and text messaging. See *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Red 14014, 14115 (July 3, 2003).

The TCPA creates a private right of action for liquidated damages in the amount of $500.00 per violation, or actual monetary loss, whichever is greater. 47 U.S.C. § 227(b)(3)(C). It also provides that a Court may treble the damages if it finds that the defendant committed the

violations "willfully or knowingly."  47 U.S.C. § 227(b)(3)(C).

Plaintiff has conceded that Defendant "Peterson's [Nelnet, LLC,] was not involved" in the actions giving rise to this lawsuit and has agreed to voluntarily dismiss that Defendant. Peterson's Nelnet, LLC, is therefore dismissed with prejudice, pursuant to Fed. R. Civ. P. 41(a)(2).  Plaintiff also appears to have conceded, and in any event has produced no evidence that contradicts Defendants' evidence showing that none of the named defendants actually sent the text message(s) at issue in this case. The uncontroverted evidence presented to the Court shows that it was River City who sent the text message(s).  Nonetheless, Plaintiff argues that CUnet is vicariously liable under the TCPA for River City's actions because CUnet entered a mobile media marketing agreement with CornerBlue, who in turn hired AKMG, who hired River City, who sent the text message at issue.  Plaintiff also argues that Nelnet, Inc. is jointly liable with CUnet under a theory of alter-ego, derivative liability.[5]

The FCC has determined, and the federal courts have recently acknowledged that the

---

[5] It is unclear whether this derivative liability theory should even be considered.  Although the issue was clearly addressed during the discovery phase of this litigation, the Amended Complaint did not set forth sufficient facts and allegations to support a claim for piercing the corporate veil.  See, e.g., *Salatin v. Trans Healthcare of Ohio, Inc*., 170 F. Supp.2d 775 (N.D. Ohio 2001)*; Gill v. Beyers Chevrolet LLC*, 2006 U.S. Dist. LEXIS 59680, *12-14 (S.D. Ohio Aug. 23, 2006); *Sudamax Industria e Comercia de Cigarros, LTDA v. Buttes & Ashes, Inc*., 516 F. Supp.2d 841, 847 (W.D. Ky. 2007). Further, if the internal affairs doctrine were applied to the issue of whether to pierce the corporate veil, it is possible that Delaware law would apply, and Delaware law is more stringent in the requirements necessary to recognize liability under an alter-ego theory.  See *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 U.S. Dist. LEXIS 19405 (N.D. Ohio Mar. 4, 2010); *Kalb, Voorhis & Co. V. Am. Fin. Corp*., 8 F.3d 130 (2d Cir. 1993); *Judson Atkinson Candies, Inc. V. Latini-Hohberger Dhimantec*, 529 F.3d 371 (7th Cir. 2008); *Wellman v. DuPont Dow Elastomers* LLC, 739 F. Supp.2d 665 (D. Del. 2010); *Trevino v. Merscorp, Inc*., 583 F. Supp. 2d 521, 528 (D.Del. 2008).  In any case, the derivative liability issue is moot unless Plaintiff can prove that CUnet is liable for the texts sent by River City.

prohibitions contained in section 227(b) of the TCPA incorporate the basic agency principles of vicarious liability.  See, *In re DISH Network, 28 FCC Rcd* 6574, 2013 FCC LEXIS 2057, ¶¶ 35-39 (May 9, 2013); see also, e.g., *Mais v. GulfCoast Collections Bureau, Inc*., 2013 U.S. Dist. LEXIS 65603 (S.D. Fla. May 8, 2013).  The principles of the federal common law of agency govern the determination as to whether a seller is liable for the actions of a telemarketer who is promoting the seller's product.  See, *DISH Network v. Federal Communications Commission*, Case No. 13-1182 (DC Cir. Jan. 22, 2014).

A principal may be vicariously liable for an agent's tortious conduct if the agent had actual authority from the principal for the conduct.  See *Jones v. Federated Fin. Reserve Corp*., 144 F.3d 961, 965 (6th Cir. 1998).  Thus, in order to establish vicarious liability under the TCPA, following the federal common law principles, a plaintiff must show that the actual caller (in this case River City) acted as an agent of the defendant and that the defendant controlled or had the right to control them and the manner and means of the text messaging campaign they conducted. *Thomas v. Taco Bell Corp*., 879 F. Supp.2d 1079, 1084 (C.D. Cal. 2012); *Mey v. Pinnacle Security, LLC*, 2012 U.S. Dist. LEXIS 129267 at *12 (N.D.W.V. Sept. 12, 2012).

Representatives from both CUnet and CornerBlue testified that they both understood that no text messaging was allowed under the CornerBlue mobile media marketing agreement (ECF #92-2 at 92); the agreement between these parties in no way mentioned text messaging; the banner ads submitted by and approved by CUnet under the agreement were not capable of transmission by text message; and, CUnet at least twice suspended CornerBlue's account when the text messaging was discovered.   Plaintiff, nonetheless, contends that there is a factual question as to whether CornerBlue was authorized to use text messaging in its mobile media

-9-

campaign for CUnet, citing a pre-agreement pricing sheet that mentions text messages with receiver's consent,[6] and post-text messaging emails that Plaintiff contends do not exhibit sufficient remorse or surprise to support a finding that the text messaging was unauthorized. While it is doubtful, based on the evidence submitted to this Court, that any jury could find that CornerBlue was authorized to send text messages under this agreement, and there is no way, under the evidence presented, that anyone could find CornerBlue was authorized to send text messages to any recipient who had not previously consented to receive the text message, we need not determine CornerBlue's agency or authorization status to decide this case. That is because CornerBlue did not send the text message(s) at issue.

The question that must be determined is whether River City was acting as CUnet's agent when it sent the text message(s) promoting the CollegeQuest campaign. The evidence is undisputed that River City never received any authorization, guidance, or other directive from CUnet or CornerBlue. In fact, River City did not know the marketing was being performed on behalf of CUnet or as a subcontractor for CornerBlue. Further, CUnet was unaware of River City's involvement, and had no idea the company even existed when the texts were sent.  The evidence shows that River City was hired by AKMG;  AKMG authorized River City to engage in a text messaging campaign; and, AKMG supplied the messages sent by River City.  There is no evidence to suggest that either CUnet or CornerBlue authorized AKMG or River City to use text messaging as part of the campaign.

---

[6] The contract between CUnet and CornerBlue specifically "supercedes all prior or contemporaneous written or oral agreements or representations between the parties." (ECF #92-2 at 46). Therefore, any indication in the pricing sheets provided to CornerBlue that texting may be allowed under some circumstances cannot override the written agreement or any clarifications or representations made after the contract was entered into.

Further, CUnet's contract with CornerBlue prohibited CornerBlue from assigning, transferring, or delegating the agreement or any obligations within the agreement without prior written consent of CUnet. (ECF #92-2 at 46 (CU00015)). There is no evidence that CUnet gave prior written consent for CornerBlue to hire AKMG, or for CornerBlue or AKMG to hire River City. In addition, there is no evidence to show that prior to the messages being sent, CUnet was even aware that CornerBlue had subcontracted out the duties it was obligated to perform under the agreement.

In addition, under the agreement, CornerBlue was not allowed to "publish or distribute any written material"..."without first submitting such material to [CUnet] for written approval." (ECF # 92-2 at 45). CUnet has provided uncontroverted evidence that the only materials it approved in connection with this campaign were web banners that could not be used in a text messaging campaign. The written material sent in River City's text messages was provided by AKMG and there is no evidence whatsoever that CUnet had ever seen these materials, let alone approved them for distribution.

In short, Plaintiff has failed to provide any evidence that could support a finding that any Defendant in this case ever authorized River City to send the text messages at issue. Further there is no evidence that River City was an agent of CUnet, or an agent of CornerBlue, the only entity authorized by CUnet to engage in mobile media marketing on its behalf. Absent evidence that could establish such a relationship, Plaintiff cannot establish that the Defendants are vicariously liable under the TCPA for the text messages sent by River City.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions for Summary Judgment are GRANTED.

IT IS SO ORDERED.

                                                   */s/ Donald C. Nugent*
                                                   DONALD C. NUGENT
                                                   United States District Judge

DATED:  May 12, 2014